411 A.2d 231

**In re CUSTODY OF Patricia A. WHITE and Edward H. White.**

**Appeal of William G. WHITE.**

Superior Court of Pennsylvania.

Submitted Dec. 8, 1978.

Filed Sept. 28, 1979.

Daniel K. Deardorff, Carlisle, for appellant.

Wayne F. Shade, Carlisle, for appellee Jeanne M. White.

Before PRICE, SPAETH and WATKINS, JJ.

PRICE, Judge:

This appeal arises from the order of the trial court granting custody of Patricia A. White and Edward H. White to their natural mother, Jeanne M. White. For the following reasons, we set aside that order and remand the case for the filing of a full opinion.

Jeanne M. White (hereinafter referred to as the mother) and William G. White, appellant herein, were married in Thailand on September 9, 1963. At that time, appellant was an American Army Officer and the mother was a native to the country. Two children were born of this union, Patricia on June 6, 1964, and Edward on June 6, 1965. The marriage encountered some difficulties, but remained relatively stable until May 2, 1977. On that date, the mother discovered appellant in a hotel room with another woman. Both parties became considerably upset over the incident, and the mother testified that appellant informed her that he did not desire to have her and that she was not to have any conversation with the children. For the next month, appellant frequently absented himself from the couple's residence for reasons allegedly connected with his employment. During this period, appellant's marital difficulties were apparently communicated to his superiors in the Justice Depart-

ment, which resulted in a demand upon him to take corrective measures or find his position terminated. Attempts to arrange a solution agreeable to both his employer and wife failed, and his contract with the federal government was terminated.[1] The mother, together with the children, ultimately left Thailand on August 7, 1977, and settled in a unit of a Cumberland County motel owned by both parties.

Following his dismissal in Thailand, appellant traveled throughout Europe from August 30 until his return to the motel property on or about September 21, 1977, where he resided, with his brother, in a residence which was connected to the motel. On October 28, 1977, the mother filed a petition, and appellant a cross-petition, for custody of the children. This appeal was filed following the award of custody to the mother.

■ Preliminarily, it is well established that the scope of review of this court in such disputes is of the broadest type. *Commonwealth ex rel. Spriggs v. Carson,* 470 Pa. 290, 368 A.2d 635 (1977); *Commonwealth ex rel. Myers v. Myers,* 468 Pa. 134, 360 A.2d 587 (1976); *In re Custody of Neal,* 260 Pa.Super. 151, 393 A.2d 1057 (1978). Although we will not usurp the fact-finding function of the trial court, we are not bound by deductions or inferences made by the hearing judge from the facts as found. *Trefsgar v. Trefsgar,* 261 Pa.Super. 1, 395 A.2d 273 (1978); *Commonwealth ex rel. Ulmer v. Ulmer,* 231 Pa.Super. 144, 331 A.2d 665 (1974); *Commonwealth ex rel. Grillo v. Shuster,* 226 Pa.Super. 229, 312 A.2d 58 (1973). Because of the Commonwealth's legitimate and overriding concern for the well-being of its children, we are required to render an independent judgment based on the evidence and testimony and make such order on the merits of the case as to effect a just result. *Spells v. Spells,* 250 Pa.Super. 168, 378 A.2d 879 (1977); *Commonwealth ex rel. Zeedick v. Zeedick,* 213 Pa.Super. 114, 245 A.2d 663 (1968). So as to facilitate this broad review, we

1. Appellant admitted that various alternatives were discussed with his wife, including one in which she would receive $20,000 to leave Thailand and the children, and travel alone to the United States.

have consistently emphasized that the hearing court must provide us not only with a complete record, *Augustine v. Augustine,* 228 Pa.Super. 312, 324 A.2d 477 (1974), but also with a complete and comprehensive opinion which contains a thorough analysis of the record ans specific reasons for the court's ultimate decision. *Martincheck v. Martincheck,* 262 Pa.Super. 346, 396 A.2d 788 (1979); *Tobias v. Tobias,* 248 Pa.Super. 168, 374 A.2d 1372 (1977); *Gunter v. Gunter,* 240 Pa.Super. 382, 361 A.2d 307 (1976). Absent an abuse of discretion, we will not reverse a hearing judge who complies with these requirements.

■ Instantly, this requisite reasoned analysis of the pertinent evidence is well-nigh wholly absent. It is axiomatic that the pole star of any custody proceeding is the best interests of the child, a term which encompasses his spiritual, physical, emotional and intellectual well being. *In re Custody of Neal, supra; Shoup v. Shoup,* 257 Pa.Super. 263, 390 A.2d 814 (1978); *Commonwealth ex rel. Scott v. Martin,* 252 Pa.Super. 178, 381 A.2d 173 (1977); *Commonwealth ex rel. Cutler v. Cutler,* 246 Pa.Super. 82, 369 A.2d 821 (1977). Yet in its opinion, the sole comment made by the court as to the relative merit of the parents in effecting the children's best interest is that "it is obvious that the wife had, during the entire life of the children, looked after and cared for them." (Opinion at 3). Rather than exploring the qualities of the parents which might best serve the children, the court dwells at length on the action of the parties which precipitated the instant suit:

"We find the foregoing narration to be the facts of the case and have no difficulty in concluding that the husband's involvement with another woman was the basic trigger for the present situation . . ..

This is a most unfortunate situation but it is obvious that the wife had, during the entire life of the children, looked after and cared for them. We find the present situation to have been triggered by the misconduct of the husband involving another woman." (Opinion at 3).

While appellant's extramarital affairs may indeed have "triggered" the disintegration of the marriage, such a factor has little bearing on his present ability, or lack thereof, to attend to the children's best interests. A spouse's past marital misconduct is significant only to the degree that the welfare of the children is likely to be affected thereby. *See, e. g., Commonwealth ex rel. Myers v. Myers, supra; Commonwealth ex rel. Spriggs v. Carson, supra; Augustine v. Augustine, supra.* Even a parent's present non-marital relationship is not sufficient to deny him or her custody of the children; in each case, all relevant circumstances must be examined so as to determine what action would be in the best interests of the child. To the extent that this record indicates the use of an order of custody as a method of punishing the parent more responsible for the marital discord, we disapprove such use; our sole concern is the child's welfare. Instantly the court offers no comment on whether it believed the children adversely affected by appellant's affairs.[2]

Indeed, we are offered neither guidance as to the credibility of the witnesses nor the trial judge's findings as to the probability of the incidents testified to at the hearing. We have often noted that the hearing judge is in a far superior position to determine matters of credibility, and to evaluate the attitude and sincerity of the witnesses. *Jones v. Kniess,* 249 Pa.Super. 134, 375 A.2d 795 (1977). Such an advantage is negated, however, when the lower court fails to enunciate

**2.** The hearing judge did note that both children expressed a preference to be with their father. Patricia, thirteen years of age at the time of the hearing, indicated that she had poor relations with her mother. (N.T. 99). Edward, twelve at the time, stated that his father would take them on comping trips if he were awarded custody. (N.T. 103). Both responded in the negative when queried as to whether appellant told them to state their preference for him. The court chose to disregard their preferences because it "was obvious that both had been considerably influenced by the father. . . . " (Opinion at 3). It has previously been held that while a child's desire is not controlling, it constitutes a factor to be considered, particularly as the children grow older. *Commonwealth ex rel. Holschuh v. Holland-Moritz,* 448 Pa. 437, 292 A.2d 380 (1972); *Tomlinson v. Tomlinson,* 248 Pa.Super. 196, 374 A.2d 1386 (1977); *In re Custody of Myers,* 242 Pa.Super. 225, 363 A.2d 1242 (1976).

its findings on credibility. The court nowhere comments on appellant's allegation of the mother's emotional instability and neglect of the children, failure to discipline the children, and frequent pill taking, remarking only that she was a "highly emotional" woman. (Opinion at 3).[3] Similarly, while we have the cold record of the mother's testimony recounting appellant's disregard of the children's welfare by leaving the marital abode, his beating of the mother, and his lack of financial support, we are bereft of guidance from the hearing judge on her credibility.

While we might review the record and reach a conclusion without the benefit of a proper analysis by the lower court, such a course would serve neither the best interests of the children nor the Commonwealth. We are loath to pass judgment on something as precious and intrinsically valuable as a child's welfare without every possible piece of information bearing on the subject. It is for this reason that we demand a full record and a probing analysis thereof. Instantly, the opinion we are presented with renders it impossible to effect a just result.[4]

The order of the lower court is consequently set aside, and the record is remanded for entry of a full opinion.

3. Apparently, the one major impression made on the court was appellant's testimony that if he were awarded custody, his brother would vacate the residence while appellant would move in with the children. (N.T. 77). When questioned as to whether the same would happen if custody were awarded to the mother, appellant stated that he did not know if his brother would then vacate and allow the mother to enter. (N.T. 77). While this is no doubt revealing, it hardly constitutes the paramount reason on which to predicate custody.

4. We note also that the court concludes its opinion thus: "[W]e saw and see no reason to deprive the wife of the custody of the children and to award them to the husband." (Opinion at 4). While this may simply be a recognition of the actual status of the children at the time of the hearing, we reiterate that the burden of proof in these cases is shared equally by the contesting parents. *In re Custody of Hernandez*, 249 Pa.Super. 274, 376 A.2d 648 (1977). It is now recognized that the use of presumptions in matters as delicate as child custody disputes is not only illogical, but it insidiously facilitates the entry of improper judgments.