285 Pa. Superior Ct. 444 (1981)
427 A.2d 1370
COMMONWEALTH of Pennsylvania ex rel. E.H.T.
v.
R.E.T., Sr.
Appeal of E.H.T.
Superior Court of Pennsylvania.
Argued December 3, 1979.
Filed April 3, 1981.
*447 Gilbert J. Scutti, Philadelphia, for appellant.
James M. Potter, Reading, for appellee.
Before PRICE, WATKINS and HOFFMAN, JJ.
PRICE, Judge:
The instant appeal is from the order of the Court of Common Pleas of Berks County granting custody of A. and H.[1] to appellee, R.E.T., Sr. Appellee and appellant, E.H.T., natural mother of A. and H., were married in January, 1967, separated in April, 1972, and subsequently divorced. The couple's two children resided with their parents until their separation. Thereafter, with the exception of scheduled visits with their father, the children remained in their mother's custody until September 8, 1978, the date of the order awarding custody to appellee.[2]
*448 Appellant argues that the order granting custody to appellee is not in the best interest of the children because the court allegedly (1) disturbed a successful custody arrangement without a sufficient reason; (2) ignored the eldest child's expressed preference to live with his mother; and (3) utilized the decree to penalize appellant for moving to North Carolina with the children.[3] For the reasons that follow, we disagree with these contentions and thus affirm the order of the trial court.
It is axiomatic that the singular concern in a custody proceeding is the best interest and welfare of the children involved. See Wenger v. Wenger, 267 Pa.Super. 134, 406 A.2d 555 (1979). To ensure that proper attention is addressed to this concern, we are obligated to exercise the broadest scope of review whenever a custody matter is before us on appeal. Commonwealth ex rel. Drum v. Drum, 263 Pa.Super. 248, 251, 397 A.2d 1192, 1193 (1979). Nonetheless, since the trial judge is in the best position to evaluate the attitudes, sincerity, credibility, and demeanor of the witnesses involved, his "determination of custody should be accorded great weight." Commonwealth ex rel. Rainford v. Cirillo, 222 Pa.Super. 591, 597-98, 296 A.2d 838, 841 (1972) (citation omitted). See, e.g., Trefsgar v. Trefsgar, 261 Pa.Super. 1, 395 A.2d 273 (1973); Commonwealth ex rel. Zeedick v. Zeedick, 213 Pa.Super. 114, 117, 245 A.2d 663, 665 (1968). Thus, although we are not duty bound to accept the trial court's determination, we will defer to it, absent an abuse of discretion, if the judge has thoroughly investigated the facts, that investigation is documented by a complete record, and a comprehensive analysis of the judge's findings is *449 contained in a written opinion. Commonwealth ex rel. Rainford v. Cirillo, 222 Pa.Super. at 597-98, 296 A.2d at 841. See Commonwealth ex rel. Schwarz v. Schwarz, 252 Pa.Super. 95, 380 A.2d 1299 (1977). Instantly, the trial judge has complied with this formula and thus deference to his determination is warranted.
Appellant first contends that the trial court erred by interfering with the existing custodial relationship since no evidence was adduced to prove that she was an unfit mother. We cannot agree. Although one's desire to relocate his or her place of residence hardly suggests a lack of stability or renders him or her unfit to serve as a custodial parent, the manner in, and care with, which such a relocation is accomplished may serve as one indication of that person's stability and consequent parental fitness. We find this to be particularly true on the record sub judice.
On one occasion, for example, July 1, 1978, appellant left her home in Pennsylvania for a vacation with her two children. The trio ventured to North Carolina, a state in which they had neither family nor friends prior to their arrival. Cf. Davidyan v. Davidyan, 230 Pa.Super. 599, 327 A.2d 145 (1974) (custody awarded to mother despite her intent to remove child to Scotland, since, among other things, mother's family resided in Scotland and the child had also been there on some occasions). On July 15, only fourteen days after the vacation began, appellant decided that she and her children would become residents of North Carolina. Seven days later, on July 22, appellant journeyed alone to Pennsylvania to supervise the transfer of her family's belongings to their new home. At this same time, her children remained in North Carolina with people who, days earlier, had been complete strangers. Clearly, appellant's decision to reside in North Carolina was, as the trial judge concluded, "spur of the moment." Slip op. at 11.
Nor are we persuaded by appellant's contention that one of the factors which convinced her to remain in North *450 Carolina was the quality of education that her children could receive by so doing See N.T. 153. First, there is nothing in the record to suggest that the children's education was in need of improvement. The children had been enrolled in enrichment programs and their levels of achievement reflected the quality of those programs. Second, even assuming that a change in schools was warranted, appellant's argument as to the quality of the education is questionable. Appellant had not even decided to move to North Carolina until July 15, 1978. She paid the tuition to enroll her children in the Heritage Christian Day School, however, only six days later, on July 21, 1978. It thus defies reason to suggest either that appellant thoroughly investigated the quality of the Heritage School or the other alternatives available to the children in North Carolina or in some other locale. This conclusion is buttressed by the fact that the Heritage School had not been accredited as of the date of the children's enrollment and had not even been completely constructed as of the date of their alleged "investigatory" visit. N.T. 126-27.
Thus, rather than a factor precipitating the move, the children's welfare, educational or otherwise appears to have been given little, if any, consideration. Even if parental fitness had been the controlling question,[4] therefore, there is evidence in the record to support a conclusion that appellant *451 lacks sufficient stability to provide a proper home for her children.[5]
Appellant next contends that the trial court erred in fashioning a decree that disregarded A.'s expressed preference to remain with his mother. We disagree.
The trial judge met in chambers with both A. and his sister H. Counsel were present and, together with the court, had an opportunity to question the children during the recorded interview. See Cheppa v. Cheppa, 246 Pa.Super. 149, 151, 369 A.2d 854, 856 (1977). During the course of this discussion, A. was asked by appellant's counsel whether he was satisfied with the custody arrangement then in existence. Since A.'s response was negative, he was questioned concerning the reason for his dissatisfaction. A. responded thus: "Well, I'd rather be at [sic] one person for a total time or the other person because just this constant traveling back and forth is rather uncomfortable." N.T. 48 (emphasis added). A. reiterated this point in response to the court's interrogatory:
THE COURT: Now, I remember, to that, I think you said it was sort of uncomfortable, I think that's your words, to travel from one to the other. Do I understand then that you are telling me that you would like me, as far as you are concerned, that you should be with either your mother or your father all of the time and not see the other at all, or do I hear you wrong?

*452 [A.]: Well, I'd like to see maybe one when it was my will but not that I must do such.
THE COURT: All right. That clarifies that a little bit. And I'm going to ask you something that I'm going to ask everybody not to bother to report back to their respective people, it would be your mother and your father. I want to know myself. Where would you like to live?
[A.]: Where would I like to live? You mean with ____ (whispering to the judge) [mother].
N.T. 67 & 175.
Although A.[6] expressed a preference to remain with his mother, this expression is not dispositive. "[T]he expression by a child of a wish to stay with a particular parent [,though] a factor which should be considered, . . . is not controlling. In re Custody of Myers, 242 Pa.Super. 225, 363 *453 A.2d 1242 (1976); Commonwealth ex rel. Holschuh v. Holland-Moritz, [448 Pa. 437, 292 A.2d 380 (1972)]." In re Leskovich, 253 Pa.Super. 349, 358 n. 6, 385 A.2d 373, 377 n. 6 (1978). Moreover, "a bare statement of preference, without more, is of little persuasive value." Tomlinson v. Tomlinson, 248 Pa.Super. 196, 202, 374 A.2d 1386, 1389 (1977).
Instantly, A.'s only statement was that he preferred to remain with his mother. The context in which the statement was made, moreover, leaves no doubt that A.'s concern was for stability, for an opportunity to engage in childhood activities, scouts and sports, without the disruption of visitation periods. Slip op. at 14-15. Contrary to appellant's intimation, there is not even a scintilla of evidence to suggest that A.'s preference resulted from fear of, or hatred for, his father.[7] Thus, although the trial court concluded that A.'s preference "merit[ed] serious consideration," it nonetheless determined that "[t]he boy's preference [was] outweighed by the other circumstances of this case" including, but not limited to, the stability offered by appellee and his wife, and that desired by A. Slip op. at 15. Since we agree with this conclusion and because we are satisfied that the court gave careful consideration to the child's preference, we refuse to find error simply because the trial judge reached a decision contrary to the preference expressed by a ten year old boy.
Appellant's final contention is that the custody decree was improper since it was designed to punish her for moving to North Carolina with her children in violation of a pre-existing custody order. This contention is without merit.
As has already been noted, appellant and her children began a vacation to North Carolina on July 1, 1978. On July 15, 1978, appellant decided that she and her children would become residents of North Carolina. This decision was made without consultation with, or notice to, appellee, whose court-ordered visitation period with the children was scheduled to begin on the 24th of July. Even members of *454 appellant's family were uninformed of her decision to move. Indeed, it was only with the aid of private detectives that appellee discovered the whereabouts of his children and, on August 3, 1978, was able to bring them back with him to Pennsylvania. By that time, however, appellant had already been unsuccessful in her attempt to terminate appellee's visitation rights in the North Carolina courts. Appellant admits, in fact, that she would never have returned the children to appellee, absent an order by the North Carolina Court directing her to comply with the outstanding Pennsylvania custody order. N.T. 131.
In these circumstances, it is not surprising that the trial court discussed this incident at length in its opinion. The pertinent portions of that discussion follow.
In this court's opinion, [E.T.] has engaged in conduct inimical to the best interests of the children. Her move to North Carolina was, in a word, surreptitious. There was nothing in the way of planning, she decided to move while on a vacation (N.T. 115, 121) and after discussing the matter with the children "very slightly." (N.T. 48) Her reasons for moving are not credible. Under the facts presented here the mother absconded with the children from this jurisdiction. This court is convinced beyond any doubt from the totality of the testimony and record before it that Mrs. [T.] removed herself from the Commonwealth of Pennsylvania on July 1, 1978 for no other purpose than to defeat Mr. [T.'s] visitation privileges and to evade the compliance with the orders of the Pennsylvania courts. Aside from her allegation that the children were emotionally upset with the court order, the mother's stated reasons for the move were that she had found a nice home in a nice community and had enrolled the children in a school where they could get the best education in the country. (N.T. 152-153) But note that whereas the mother testified that she had rented a three-bedroom home in North Carolina, at the time of the hearing she had not signed a lease nor had she received one in the mail. (N.T. 109-110) She enrolled the children in a school that had not been *455 accredited by state authorities (N.T. 127), and she did not even know how much of the school building had been completed. (N.T. 126) [A.] corroborated this last point when he told the court that he had not seen the interior of the school building because it was still under construction. (N.T. 56) The mother had no family in North Carolina and when she returned to Pennsylvania on July 22, 1978 the children were left with persons whom she had met only ten days before. (N.T. 118) Her move from this Commonwealth was made in great haste and in the course of one weekend. She failed to notify Mr. [T.], her attorney or any members of her family that she was leaving. (N.T. 126) Her action constituted a direct and wilful violation of the court's order pertaining to the father's temporary custody rights which were to commence on July 24, 1978. The mother knew of these rights and she also knew that no legal action had been taken to change the order. (N.T. 156)

The court in deciding questions of custody may consider the effects a change of location may have on the children. Comm. ex rel. Parikh v. Parikh, supra, Davidyan v. Davidyan, 230 Pa.Super. 599, 327 A.2d 145 (1974). We think that the mother's spur of the moment decision to reside in North Carolina, her speedy and covert departure from Pennsylvania and the consequent sudden and complete immersion of the children in an unfamiliar environment all militate against the conclusion that she should continue to have custody of [A.] and [H.]. Such a move will also have a deleterious effect on the relations between the father and the children. Mr. [T.] testified that if the children were to live in North Carolina it would not be practical for him to see them as frequently as he had when they resided in Berks County, due to the distances involved. (N.T. 7) Too, the mother's violation of the court order does little to encourage a respect for authority in the children and has a bearing on her fitness as a parent. See Comm. ex rel. Schofield v. Schofield, 173 Pa.Super. 631, 98 A.2d 437 (1953), Comm. ex rel Blank v. Rutledge, 97 Montgomery 257, vacated on other grounds, *456 234 Pa.Super. 339, 339 A.2d 771 (1975). Finally, the mother is not in the best of health. (N.T. 135-136)
The mother's move to North Carolina is not ipso facto dispositive of this case. We wish to make it clear that we have no intention of interfering with her right to travel. See Comm. ex rel. Steiner v. Steiner, 257 Pa.Super. 457, 390 A.2d 1326 (1978). But we do not view this case as simply a matter of one parent wishing to reside in another state with her children. If the mother and/or the children were truly unhappy with the terms of the visitation order, the appropriate form of redress would have been to petition this court for a further amendment of the already thrice amended order. To simply leave the Commonwealth in a secretive fashion is an improper and regrettable solution to the problem.
Slip op. at 9-12 (emphasis added). Despite the length of this discussion, there is not one point in the almost four pages of text dealing with this issue where the court intimates that it intended to utilize the custody decree as a means of punishing improper behavior in order to vindicate the authority of the court. Indeed, as the italicized portions of the trial judge's opinion indicate, even the two direct references to appellant's violation of the court order are discussed only as they relate to, or impact upon, the children involved in this custody dispute.
Since there is no evidence to support appellant's allegation on this issue, further discussion would ordinarily be unnecessary. To ensure that there exists no confusion as to the state of the law in this Commonwealth and to indicate our disapproval of appellant's conduct, however, we continue. Although one's violation of a court order is certainly not controlling in resolving a custody dispute, there is absolutely nothing improper about considering such a violation in the evaluation of each party's parental attributes.
When a party, in bad faith, removes a child from another jurisdiction in order to circumvent an adverse custody order of a court in that jurisdiction, our courts have held that such evasion of the law, if proven, should *457 be an important factor when Pennsylvania courts consider the custody dispute. Commonwealth ex rel. Rogers v. Daven, 298 Pa. 416, 148 A. 524 (1930); Irizarry Appeal, 195 Pa.Super. 104, 169 A.2d 307 (1961). The instant case raises the same troublesome issue. In resorting to self-help remedies, [appellant] acted in a manner inconsistent with the orderly and impartial resolution of disputes concerning the custody of minors. In ascertaining who would best serve the welfare of the children, the lower court should consider [appellant's] disrespect for the legal process and evaluate how it bears on [her] fitness to be awarded custody of the children.

In re Leskovich, 253 Pa.Super. at 359, 385 A.2d at 378 (emphasis added) (citations omitted). See, e.g., In re Custody of Myers, 242 Pa.Super. 225, 231, 363 A.2d 1242, 1245 (1976) (Spaeth, J. concurring). We thus find no error in the court's consideration of appellant's conduct.
For the foregoing reasons, the order granting custody of A. and H. to appellee is affirmed.
HOFFMAN, J., files a concurring opinion.
HOFFMAN, Judge, concurring:
Although I concur fully in the judgment of the Court, I write separately to address what I consider to be an inconsistency in the majority's articulation of our scope of review in cases such as this.
Unquestionably, we are presented with no more important class of cases than those which involve the custody of children. Accordingly, our courts have consistently stated that "[t]he scope of [appellate] review in a child custody case is of the broadest type. Commonwealth ex rel. Spriggs v. Carson, 470 Pa. 290, 368 A.2d 635 (1977); Commonwealth ex rel. Myers v. Myers, 468 Pa. 134, 360 A.2d 587 (1976); In re Custody of Neal, 260 Pa.Super. 151, 393 A.2d 1057 (1978)." Garrity v. Garrity, 268 Pa.Super. 217, 220, 407 A.2d 1323, 1325 (1979). See also Commonwealth ex rel. Pierce v. Pierce, 493 Pa. 292, 426 A.2d 555 (1981); Sipe v. Shaffer, 263 *458 Pa.Super. 27, 396 A.2d 1359 (1979); Scarlett v. Scarlett, 257 Pa.Super. 468, 390 A.2d 1331 (1978); In re Custody of Myers, 242 Pa.Super. 225, 363 A.2d 1242 (1976); Commonwealth ex rel. Ulmer v. Ulmer, 231 Pa.Super. 144, 331 A.2d 665 (1974). Moreover, in reviewing custody cases, "[w]e must exercise an independent judgment based on the evidence and make such an order on the merits of the case as right and justice dictate." Commonwealth ex rel. Pierce v. Pierce, supra, 493 Pa. at 296, 426 A.2d at 557 (emphasis added).
While acknowledging our obligation "to exercise the broadest scope of review," the majority nevertheless goes on to state that we will defer to the hearing judge's determination of custody "absent an abuse of discretion, if the judge has thoroughly investigated the facts, that investigation is documented by a complete record, and a comprehensive analysis of the judge's findings is contained in a written opinion." At 1372 (emphasis added). Although this latter statement of our review procedure is not without support in the case law,[1] I believe that employment of an "abuse of discretion" standard is wholly at odds with the broad scope of review and independent judgment which our cases command we perform and which such sensitive subject matter merits. In Mielcuszny v. Rosol, 317 Pa. 91, 176 A. 236 (1934), our Supreme Court defined "abuse of discretion" as follows:
An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused.
Id., 317 Pa. at 93-94, 176 A. at 237. See also Brown & Bigelow v. Borish, 165 Pa.Super. 308, 310, 67 A.2d 823, 825 *459 (1949). In Commonwealth ex rel. McQuiddy v. McQuiddy, 238 Pa.Super. 390, 358 A.2d 102 (1976), this Court stated that
[w]hen the court has come to a conclusion by the exercise of its discretion, the party complaining of it on appeal has a heavy burden; it is not sufficient to persuade the appellate court that it might have reached a different conclusion if, in the first place, charged with the duty imposed on the court below; it is necessary to go further and show an abuse of the discretionary power.
Id., 238 Pa.Super. at 393-94, 358 A.2d at 104 (quotations omitted). Thus, if we are indeed to review a custody order pursuant to the "abuse of discretion" standard, then we may not disturb that order unless the appellant meets the "heavy burden" of convincing us that the lower court ignored or misapplied the law, exercised a manifestly unreasonable judgment, or acted out of partiality, prejudice, bias, or ill-will. This minimally exacting level of appellate scrutiny, while proper in other contexts,[2] is manifestly inappropriate in cases in which our scope of review purports to be of the broadest type. Accordingly, I believe that it is time for us to disavow a standard which is inconsistent with both our responsibility and our actual practice of closely scrutinizing custody decisions.[3]
NOTES
[1] At the time of the hearing in this matter, A. was 10½ and H. was 8 years of age.
[2] Immediately following their separation, appellant received custody of the children by agreement of the parties. A court order dated December 20, 1972, continued custody in appellant while providing visitation privileges to appellee. Since that time, three contempt, and two habeas corpus, proceedings have been commenced by appellee and the initial order has been amended on three occasions. Immediately prior to the proceedings resulting in this appeal, the custody status quo provided appellant with continued custody of the children and entitled appellee to custody on alternate weekends throughout the year and for a period of five weeks each summer.
[3] Appellant also contends that the trial court overemphasized appellee's ability to satisfy the material needs of the children. Brief for Appellant at 8. Since this argument is mentioned only in the "Summary of Argument" and not in the body of appellant's brief and because the record contains absolutely no evidence to support a "material needs" claim, we will not address it in this opinion.
[4] the fitness of the parent is an important factor in a determination of the best interest of a child, a finding that both parents are equally fit is not equivalent to a finding that the best interest of the child would be equally served with either parent. . . . [A] father can be awarded custody even though both parents are `found to be fit and proper,' as long as the child's welfare would be best secured by such a disposition . . . . A father need not prove that the mother is unfit in order to obtain an award of custody.
Commonwealth ex rel. Cutler v. Cutler, 246 Pa.Super. 82, 85-86, 369 A.2d 821, 822 (1977) (citation omitted) (emphasis added). Instantly, the trial court was convinced that "the children's interests [would be] best served by placing them in the custody of their father." Slip op. at 15. The relative fitness of the mother, therefore, was not controlling.
[5] We do not mean to suggest that this isolated, "spur of the moment" move mandates the conclusion that appellant is an unfit parent. Appellant's health problems, the court order which appellant violated in moving to North Carolina, the fact that continued custody in the mother would not preserve the status quo since the mother's Pennsylvania home was dissolved and the children would necessarily be obliged to begin new lives in North Carolina, and the children's familiarity with their father, his wife, and their home in Pennsylvania were just some of the factors which impelled the court to conclude that appellant was, relatively speaking, less fit to care for the children than were appellee and his wife. This conclusion was based on the positive and negative evidence adduced by, and relating to, both parties. The court thus did not err in reaching the conclusion "that [R.] and [N.] [appellee's wife] are offering a home life which is much more stable" than that offered by appellant. N.T. 174.
[6] H.'s whispered statement to the judge was that, "It makes no difference."* N.T. 175. The following portion of the trial court's opinion reflects the impact which this statement had on the judge's decision.

[H.] . . . told the court that it made no difference to her where she lived. This attitude of indifference coupled with her young age leads us to conclude that the child would be contented in the custody of either parent. Since she is already familiar with her father's household and she apparently likes her stepmother, we feel that the transition from one home to another would require [H.] to make only minor adjustments. As a matter of fact, since the maternal "home" recognized by the child as such in Mt. Penn no longer exists [now that the child's mother has moved to North Carolina], there would be arguably less adjustment for her to live in Mr. [T.'s] home with which the child also has been familiar for a lengthy period, even to having her own personal room there.
Slip op. at 14.
* When H.'s remarks were being placed on the record, appellant's counsel disagreed with what the judge claimed H. said. The following exchange ensued:
MR. SCUTTI: "It makes no difference," or "I'll leave it up to you?"
THE COURT: No, "it makes no difference."
MR. SCUTTI: I thought she said "I'll leave it up to you."
THE COURT: "It doesn't make any difference," those were the exact words, "It doesn't make any difference," and her saying that.
N.T. 175. See also Brief for Appellant at 6. Since H. was whispering her preference in the judge's ear and not directing her remarks to either counsel, we must defer to the recollection of the trial judge as the source of what was said.
[7] Indeed, both A. and H. expressed their love and affection for their father and his wife N.
[1] Indeed, the opinion which the majority cites for the proposition (Commonwealth ex rel. Rainford v. Cirillo, 222 Pa.Super. 591, 296 A.2d 838 (1972)) was authored by this writer. See also Garrity v. Garrity, 268 Pa.Super. 217, 407 A.2d 1323 (1979); McCourt v. Meyers, 268 Pa.Super. 152, 407 A.2d 875 (1979); In re Custody of Neal, 260 Pa.Super. 151, 393 A.2d 1057 (1978); Tobias v. Tobias, 248 Pa.Super. 168, 374 A.2d 1372 (1977); Commonwealth ex rel. Mazza v. Sarvice, 227 Pa.Super. 38, 323 A.2d 41 (1974).
[2] See, e.g., McCoy v. Public Acceptance Corp., 451 Pa. 495, 305 A.2d 698 (1973); Goldstein v. Graduate Hospital of the University of Pennsylvania, 441 Pa. 179, 272 A.2d 472 (1971) (petitions to open judgments); Commonwealth ex rel. McQuiddy v. McQuiddy, supra (support); Commonwealth v. Knight, 479 Pa. 209, 387 A.2d 1297 (1978) (sentencing).
[3] I hasten to add that by these comments I do not purport to challenge existing law which requires us to defer to findings of fact which are supported in the record. See, e.g., In re Custody of Hernandez, 249 Pa.Super. 274, 376 A.2d 648 (1977); Commonwealth ex rel. Grillo v. Shuster, 226 Pa.Super. 229, 312 A.2d 58 (1973); Commonwealth ex rel. Gifford v. Miller, 213 Pa.Super. 269, 248 A.2d 63 (1968). Such deference is a necessary consequence of the hearing judge's superior opportunity to view witnesses and weigh credibility. Despite our obligation to defer to the lower court's findings of fact, however, "we are not bound by inferences or deductions made by the hearing judge from the facts found." In re Custody of Hernandez, supra, 249 Pa.Super. at 290, 376 A.2d at 656. See also Garrity v. Garrity, supra; Sipe v. Shaffer, supra. Our freedom and obligation to draw independent inferences, deductions, and conclusions from the facts as found is but a further example of the incongruity of stating our standard of review in terms of "abuse of discretion."