447 A.2d 630

COMMONWEALTH ex rel. Michael Scott NEWCOMER

v.

Jeffrey KING, Ralph King, and Retha King.

**Appeal of Paula PETERSON.**

Superior Court of Pennsylvania.

Argued March 15, 1982.

Filed June 25, 1982.

Joseph M. Kulik, Pittsburgh, for appellant.

George L. Hallal, Uniontown, for appellees.

Before SPAETH, JOHNSON and HOFFMAN, JJ.

JOHNSON, Judge:

This is an appeal from an order awarding custody of a seven year old boy, Michael Scott Newcomer, to his father, Appellee Jeffrey King. After making a complete review of the record, we find the record and opinion below to be

inadequate, and therefore vacate the order and remand the case for further proceedings consistent with this opinion.

The child in question was born March 16, 1975 to Appellant Paula Peterson. Appellee Jeffrey King is the natural father and Ralph and Retha King the child's paternal grandparents, with whom Appellee Jeffrey King currently resides.

The record indicates that after leaving the hospital a few days after the birth of the child, Appellant and the child resided with Jeffrey King in the home of Ralph and Retha King. There was contradictory testimony offered concerning whether Appellant actually resided in the King home for more than a few days after returning from the hospital.[1] In October of 1976, Appellant took up residence in a mobile home located on the King property. The record also indicates that until the summer of 1977, Retha King often cared for the child.[2]

After a disagreement with Appellee Jeffrey King, Appellant moved in with her parents during the summer of 1977 and filed a habeas corpus action for custody of the child. She was then given temporary custody and moved, along with the child, to her sister's residence in Fayette County. In September of 1977, Appellant moved into a trailer park in Westmoreland County with the child and after reconciling with Appellee Jeffrey King, married[3] him on November 3, 1977. Appellant and her husband took up residence together with the child in the trailer. Soon afterward, Appellant took the child and left for Alabama, but returned a few days later, after again reconciling with Appellee Jeffrey King.

1. Testimony indicates that Appellant rented an apartment during the period between her return from the hospital and October of 1976. She testified that although she spent some time in the apartment, she spent the majority of her time at the King residence. Appellees' testimony disputed this fact.

2. Appellant alleges that she was the primary caretaker of the child from the time of his birth, which fact was disputed by Appellees' testimony.

3. Appellant alleges that Jeffrey King told her that his sole reason for marrying her was to gain custody of the child.

Other disputed testimony indicated that Appellee Jeffrey King had abused Appellant physically. Also, there was testimony from Appellant's sister that the child, who referred to Appellant by her first name, told Appellant's sister that Appellant was a bad person and that he had been told by his father that Appellant had tried to kill him. There was also disputed testimony regarding statements made by the child that his father did not require him to go to school, to church or take a bath.

Numerous witnesses testified for each of the parents concerning their good relationship with the child, that each parent loved and cared for the child and that the child was well-adjusted and appeared happy while with that parent.

On August 9, 1978, the second child of Appellant and Jeffrey King was born. On November 14, 1978, Appellant filed a petition to set a hearing on her original habeas corpus petition, after Appellees refused to return the child or allow Appellant to see the child, who had been residing at the King residence while Appellant cared for her ill second child. An order was issued the next day giving Jeffrey King temporary custody of the child.

The hearing was scheduled for December 20, 1978 on the habeas corpus petition. Jeffrey King absconded with the child to California prior to the hearing date and he was held in contempt for failing to appear before the court on December 20, 1978. Retha King then joined her son and grandson in California. She was found in contempt after a hearing on March 15, 1979 for failing to appear before the court, after Appellant had, on February 26, 1979, filed a Petition and Rule for Contempt.

The Appellant and Appellee Jeffrey King were divorced on August 13, 1979, but Appellant was unable to locate her husband and child, despite concerted efforts, until their return to Pennsylvania in August of 1980. Upon their return, Jeffrey King was placed under arrest.

The record further indicates that Appellant is living with her second husband and the second child born of Jeffrey

King, as well as a child born of her second husband. Appellant's second husband is employed full-time and Appellant currently remains at the residence to care for the children. Appellee Jeffrey King was unemployed at the time of the hearings, but had a solid work history. His father was employed and able to provide adequately for himself, Retha King, Jeffrey King and the child.

Hearings on the habeas corpus petition were held on September 24 and December 4, 1980 and on January 29, 1981. The court issued its opinion and order in the matter on May 21, 1981.

■ The primary concern in child custody cases is the best interests of the child, including his physical, intellectual, emotional and spiritual well-being. *In re Arnold,* 286 Pa.Super. 171, 428 A.2d 627 (1981); *Commonwealth ex rel. Cutler v. Cutler,* 246 Pa.Super. 82, 369 A.2d 821 (1977).

■ It is clear that our scope of review in custody cases is of the broadest type. *Commonwealth ex rel. Pierce v. Pierce,* 493 Pa. 292, 426 A.2d 555 (1981); *Commonwealth ex rel. Oxenreider v. Oxenreider,* 290 Pa.Super. 63, 434 A.2d 130 (1981); *Commonwealth ex rel. Berman v. Berman,* 289 Pa. Super. 91, 432 A.2d 1066 (1981). We are required to exercise independent judgment based on the evidence and make such an order on the merits of the case as to do right and justice. *Commonwealth ex rel. Pierce v. Pierce, supra; Commonwealth ex rel. Oxenreider v. Oxenreider, supra; Commonwealth ex rel. Berman v. Berman, supra.* While we cannot nullify or usurp the *fact-finding* function of the trial court, we are not bound by the deductions or inferences made by them. *Robert H.H. v. May L.H.,* 293 Pa.Super. 431, 439 A.2d 187 (1981); *In re Davis,* 288 Pa.Super. 548, 432 A.2d 600 (1981); *Garrity v. Garrity,* 268 Pa.Super. 217, 407 A.2d 1323 (1979). Therefore, if the issue is whether we should reverse the lower court's findings of fact, we must defer to the lower court and reverse only where, in making the findings, the lower court has abused its discretion. *Commonwealth ex rel. Berman v. Berman, supra; In re Custody of Hernandez,* 249 Pa.Super. 274, 376 A.2d 648 (1977). However,

because of our requirement to exercise independent judgment, we will not adhere to an abuse of discretion standard in reviewing the determination of the lower court. *See Robert H.H. v. May L.H., supra; Commonwealth ex rel. Berman v. Berman, supra; In re Arnold, id.,* 286 Pa.Super. at 176, 428 A.2d at 629 (HOFFMAN, J., concurring); *Commonwealth ex rel. E.H.T. v. R.E.T.,* 285 Pa.Super. 444, 457, 427 A.2d 1370, 1376 (1981) (HOFFMAN, J., concurring).

■ So as to facilitate our broad scope of review, we consistently emphasize that the lower court must provide us with a complete record and a comprehensive opinion which contains a thorough analysis of the record and specific reasons for the court's ultimate decision. *Hugo v. Hugo,* 288 Pa.Super. 1, 430 A.2d 1183 (1981); *Garrity v. Garrity, supra.* The lower court's opinion must address the testimony and the law; it must indicate the grounds for selecting the particular findings, and the reasoning process by which the judge reached his ultimate conclusion. *Jones v. Floyd,* 276 Pa.Super. 76, 419 A.2d 102 (1980); *In re Custody of White,* 270 Pa.Super.165, 411 A.2d 231 (1979); *In re Custody of White,* 270 Pa.Super. 165, 411 A.2d 231 (1979). The lower court's opinion must also clearly demonstrate the necessity for placing custody with either the petitioner or respondent. *Robert H.H. v. May L.H., supra.*

In its opinion, the lower court determined that permanent custody should be given to Appellee Jeffrey King with liberal visitation granted to Appellant. After setting forth the facts leading up to the hearings on the habeas corpus action and making certain findings of fact, the court discussed its reasons for its determination. It concluded that both parents were capable of providing for the child, but that custody should remain with Jeffrey King because of the stable relationship developed between father and son, as in the best interests of the child.

■ The lower court correctly concluded that, in a case where both parents are equally fit to have custody, the fact that a stable, long-continued and happy relationship has developed between the child and one parent may be of critical importance in the formation of an appropriate custo-

dy decree. *Pamela J. K. v. Roger D. J.*, 277 Pa.Super. 579, 419 A.2d 1301 (1980); *Commonwealth ex rel. Cutler v. Cutler, supra.*

However, as stated in *Commonwealth ex rel. E.H.T. v. R.E.T., id.*, 285 Pa.Super. at 456–57, 427 A.2d at 1376:

> Although one's violation of a court order is certainly not controlling in resolving a custody dispute, there is absolutely nothing improper about considering such a violation in the evaluation of each party's parental attributes.
>
> When a party, in bad faith, removes a child from another jurisdiction in order to circumvent an adverse custody order of a court in that jurisdiction, *our courts have held that such evasion of the law, if proven, should be an important factor when Pennsylvania courts consider the custody dispute. Commonwealth ex rel. Rogers v. Daven*, 298 Pa. 416, 148 A. 524 (1930); *Irizarry Appeal*, 195 Pa.Super. 104, 169 A.2d 307 (1961). The instant case raises the same troublesome issue. In resorting to self-help remedies, [appellant] acted in a manner inconsistent with the orderly and impartial resolution of disputes concerning the custody of minors. *In ascertaining who would best serve the welfare of the children, the lower court should consider [appellant's] disrespect for the legal process and evaluate how it bears on [her] fitness to be awarded custody of the children.*

*In re Leskovich*, 253 Pa.Super. 349, 359, 385 A.2d 373, 378 (emphasis added) (citations omitted).

*See also, Pamela J. K. v. Roger D. J., supra; Commonwealth ex rel. Snapir v. Snapir*, 196 Pa.Super. 38, 173 A.2d 694 (1961) (father's contempt of court order, by taking minor child out of state and secreting him from family and relatives, could have bearing upon father's fitness for custody).

▮ The lower court, in its opinion, merely mentioned the absconding of the child by Jeffrey King and concluded that "the child should not be punished for the transgressions of a parent." We find this brief analysis to be insufficient in light of the court's award of custody to the father. The

court's statement appears to imply that if a parent violates the law by kidnapping his or her child, and then remains in isolation for a substantial period of time, then, because of the importance of the element of stability, he or she will have a better chance of gaining permanent legal custody of the child. This is not the law. Except in unusual circumstances, estrangement of a child from either parent will not be sanctioned. *Pamela J. K. v. Roger D. J., supra.* We also find that the lower court's finding of fact that Retha King is an "outstanding person[s] of high moral character and integrity" to be inconsistent, without further explanation, because of her previous contempt citation.

We believe that the instant case requires at least a psychological evaluation of the child, in light of the court's determination that a change in custody in the instant case would have "a very traumatic effect on the child." This requirement is strengthened by the fact that no true interview with the child was made nor transcribed. The record indicates that no psychiatric or psychological evaluation was made of any of the parties involved. In *In re Davis, supra,* the court held that the record in that custody case was complete without a psychiatric evaluation of the child and the mother, from whom custody was removed. However, in the instant case, the lower court had little on which to base its determination concerning trauma. We have often stated that in child custody cases, we will not accept a finding that has no competent evidence to support it. *Pamela J. K. v. Roger D. J., supra.*

The lower court also failed to make any reference in its opinion to the written report made by the Fayette County Children and Youth Services' caseworker. This report was ordered by the court and the court's determination delayed until its results were made known. The evaluation of the homes of Appellant and the Kings and interviews with Appellant and Appellee Jeffrey King culminated in a recommendation of awarding custody to Appellant. Under the circumstances of the instant case, the court should have at least discussed the report in its opinion, as it determined to award custody to Jeffrey King.

The lower court also failed to assess the credibility of the witnesses where there was conflicting testimony given. *See Hamilton v. Claypoole*, 283 Pa.Super. 200, 423 A.2d 1058 (1980); *In re Custody of White, supra.*

■ Finally, the court failed to adequately discuss its holding in light of the policy in our law that absent compelling reasons to the contrary, siblings should be raised in the same household.[4] *See Albright v. Commonwealth ex rel. Fetters*, 491 Pa. 320, 421 A.2d 157 (1980); *In re Davis, supra.*

■ In summary, after a complete review of the record, we find the opinion of the lower court deficient in the respects discussed supra. We also find the record to be inadequate in terms of the lack of a psychological evaluation of the child regarding any trauma to which he may be subjected if custody is awarded to Appellant.

Finally, the lower court should consider resuming temporary custody of the child with Appellant until an appropriate final order is made.

The order dated May 21, 1981 is vacated and the case remanded for proceedings and a comprehensive opinion in accordance with this opinion. Jurisdiction is not to be retained by this court.

4. Appellant has custody of the second child, born August 9, 1978.