J-A17004-19

2019 PA Super 256

COMMONWEALTH OF PENNSYLVANIA  :   IN THE SUPERIOR COURT OF
                               :              PENNSYLVANIA
                               :
             v.                :
                               :
                               :
H.D.                           :
                               :
          Appellant            :   No. 3538 EDA 2018

Appeal from the Judgment of Sentence Entered June 19, 2017
In the Court of Common Pleas of Bucks County
Criminal Division at No(s):  CP-09-CR-0005878-2016

BEFORE:  PANELLA, P.J., OLSON, J., and FORD ELLIOTT, P.J.E.

OPINION BY PANELLA, P.J.:                    **FILED AUGUST 21, 2019**

Appellant, H.D., appeals from the judgment of sentence entered on June 19, 2017, in the Court of Common Pleas of Bucks County.  This followed her conviction of Interfering with the Custody of a Child, 18 Pa.C.S.A. § 2904.  Our review of this appeal was delayed because there was originally no direct appeal; however, Appellant's direct appeal rights were reinstated *nunc pro tunc* following a Petition for Post-Conviction Collateral Relief filed on June 19, 2018. After review, we are constrained to reverse and remand for a new trial.

The primary factual dispute at trial was whether Appellant believed her child was in danger while in husband's custody. Thus, the trial court's summary of facts is undisputed for purposes of this appeal:

> Appellant and her husband had a child in 2010. Appellant's husband began divorce proceedings in June, 2015, and on July 8, 2015, Appellant and her husband entered a custody agreement in which custody of the child was exchanged every 48 hours.  They

both abided by the custody agreement until October, 2015, when Appellant first withheld custody of the child from her husband for fifteen days.

Appellant again withheld custody of the child starting in June, 2016, for forty-seven days. Upon belief that her husband was sexually, verbally, and physically abusing the child, Appellant left Bucks County with the child and did not tell the child's father, her family, or her friends where she was going. Appellant subsequently traveled from Wilkes Barre to Philadelphia to Pittsburgh to Miami with the child.

Meanwhile, when Appellant's husband had not heard from Appellant or received custody of the child pursuant to the custody agreement, he called his attorney and the police, and he filed a missing person's report. During the forty-seven days while Appellant and the child were unaccounted for, Appellant's husband also hired several private investigators, contacted the National Center for Missing and Exploited Children, submitted the case to Bring Our Missing Home, and went to the police department and his congressman's office in an effort to have the child listed as missing.

Detective Peter Lange of the Lower Makefield Township Police Department got involved in the case on June 27, 2016. On July 2, 2016, Detective Lange filed charges against Appellant for interference with custody of children and issued a warrant for Appellant's arrest. On August 2, 2016, the United States Marshal Service located Appellant in North Philadelphia, but Appellant did not tell officers where the child was. Using Appellant's phone records, Detective Lange identified a number that Appellant called often in Miami during her forty-seven-day absence. The United States Marshall Service located the child at Appellant's friend's sister's house in Miami, Florida on August 2, 2016. Appellant had decided to leave the child with friends in Miami for two weeks so that she could return to Pennsylvania to "figure out what to do." The United States Marshals contacted Appellant's husband to let him know that Appellant had been arrested and that the child was safe in Miami. Appellant's husband retrieved the child in Miami the next day.

The day before she was arrested in Philadelphia, Appellant composed, but never mailed, an eight-page letter addressed to the Director of Bucks County Children and Youth, the Director of

- 2 -

Bucks County Human Services, the Director of the Pennsylvania Office of Children and Families, an assistant district attorney at the Bucks County District Attorney's Office, a sergeant at the Pennsylvania State Police, the Attorney General of the Commonwealth of Pennsylvania, and the Director of the Center for Missing and Exploited Children, in which she wrote: "I'm refusing to turn my daughter over to [the child's father] because I'm protecting her from danger. [The child's] father is the danger. He has sexually, physically, and verbally abused my daughter. Numerous reports of abuse have been made to the Bucks County Children and Youth Services to no avail. There [are] individuals, including a police officer, a psychologist, her nanny and other individuals who . . . have filed reports of abuse on . . . behalf of my daughter against [the child's father]. I filed a report the day that my daughter personally confided in me that her father had sexually abused her. It was filed many months after the first round of sexual assault reports were filed and an investigation ensued. My decision to refuse to turn my daughter over to her father . . . in contravention of a Court Order was not made hastily. To the contrary, I made the decision after failing at every single effort I made to obtain help for my daughter. After a lengthy and unsuccessful search for justice for [the child] I was left with no other viable option."

All the reports of abuse by Appellant's husband were determined to be unfounded by Bucks County Children and Youth and the Middletown Township Police Department.

Trial Court Opinion, 1/18/19, at 1-3 (citations to record omitted).

After being charged, Appellant was found guilty of Interfering with the Custody of a Child by a jury on March 20, 2017.

At trial, the Commonwealth presented testimony and other evidence consistent with the facts as summarized by the trial court. Furthermore, the Commonwealth presented testimony demonstrating that there were thorough and substantial independent investigations into the alleged abuse, all of which concluded that the reports of abuse were either unfounded or

invalid. The defense relied upon the Appellant's unwavering belief that her daughter was being abused by the child's father to justify Appellant's refusal to hand over the child in accordance with the custody order.

On June 19, 2017, the trial court sentenced Appellant to a sentence of time served to twenty-three months with immediate parole, followed by a consecutive five-year term of probation.

Before we address the issue presented by the Appellant, which deals with the jury instructions, we must comment on the actions of Appellant in this case. Although this is clearly not an appeal in a custody matter, we are mindful of our cautionary words from ***Commonwealth ex rel. E.H.T. v. R.E.T.,*** 427 A.2d 1370 (1981):

> Although one's violation of a court order is certainly not controlling in resolving a custody dispute, there is absolutely nothing improper about considering such a violation in the evaluation of each party's parental attributes.
>
> > When a party, in bad faith, removes a child from another jurisdiction in order to circumvent an adverse custody order of a court in that jurisdiction, *our courts have held that such evasion of the law, if proven, should be an important factor when Pennsylvania courts consider the custody dispute.* ***Commonwealth ex rel. Rogers v. Daven***, 298 Pa. 416, 148 A. 524 (1930); ***Irizarry Appeal***, 195 Pa.Super. 104, 169 A.2d 307 (1961). The instant case raises the same troublesome issue. In resorting to self-help remedies, [appellant] acted in a manner inconsistent with the orderly and impartial resolution of disputes concerning the custody of minors. *In ascertaining who would best serve the welfare of the children, the lower court should consider [appellant's] disrespect for the legal process and evaluate how it bears on [her] fitness to be awarded custody of the children.*

> *In re Leskovich*, 253 Pa. Super. [349] at 359, 385 A.2d [373] at 378 (emphasis added) (citations omitted).

427 A.2d at 1376 (brackets in original). *See also, Com. ex rel Newcomer v. King*, 447 A.2d 630 (Pa. Super. 1982) (holding that stability for the child does not automatically outweigh the fact that a parent has kidnapped the child); *Commonwealth ex rel. Snapir v. Snapir*, 173 A.2d 694 (Pa. Super. 1961) (holding that father's contempt of court order by taking minor child out of state and secreting him from family and relatives could have bearing upon father's fitness for custody).

With that observation, we now address the issues that Appellant presents for our review. However, all relate to the jury instruction given by the trial court regarding the defense as provided in 18 Pa.C.S.A. § 2904(b)(1), so that a single discussion is appropriate.

Chapter 29 of the Pennsylvania Crimes Code, in Section 2904, states the elements of the crime of Interference with Custody of Children as well as the statutorily defined defenses. Relevant to the facts of this case are the following:

§ 2904. Interference with custody of children

(a) Offense defined.--A person commits an offense if he knowingly or recklessly takes or entices any child under the age of 18 years from the custody of its parent, guardian or other lawful custodian, when he has no privilege to do so.

(b) Defenses.--It is a defense that:
(1) the actor believed that his action was necessary to preserve the child from danger to its welfare.
. . . .

18 Pa.C.S.A. § 2904.

Appellant argues that the trial court erred when it added a reasonableness standard to the actions of an "actor" as defined in Section 2904(b)(1). Appellant asserts that this alleged error, which inserted the standard "reasonably believed" into the state of mind of the "actor," did not comport with the elements of the offense and the complete defense as afforded in the statute.

It is well established in our jurisprudence that "an accused in a criminal case is entitled to [the] presumption of innocence; the Commonwealth is the party that must come forward with the evidence to establish guilt. An accused is not required to disprove [her] alleged guilt of an element of an offense." **Commonwealth v. Gearhart**, 384 A.2d 1321, 1323 (Pa. Super. 1978) (citations omitted). The prosecution must disprove the defense afforded in § 2904(b)(1) once it is raised by the defense; it is never the defendant's burden to disprove the elements of an offense. As a result, the Commonwealth concedes that it was required to prove, beyond a reasonable doubt, that this defense did not apply. **See** Appellee's Brief, at 16.

Prior to trial, the Commonwealth had presented a motion *in limine* to the trial court, requesting that the trial court add the reasonableness standard to jury instruction. Notes of Testimony, 3-13-17 at 1-8. Defense counsel objected, arguing that the statute was clear on its face, without any mention of reasonableness.

The trial court later decided to include the suggested language. The relevant portions of the trial court's instructions were:

> Circumstances may exist in a case that provide the defendant a complete defense to this charge. The Commonwealth must prove beyond a reasonable doubt that such circumstances did not exist. The circumstance in this case is that the defendant believed that her action was necessary to preserve the child from danger to her welfare. So it is the Commonwealth that has the burden of disproving this defense.
>
> The Commonwealth has the burden of proving beyond a reasonable doubt that this circumstance did not exist at the time the defendant took the child. If it fails to do so, you should find the defendant not guilty. If the Commonwealth carries its burden and otherwise proves the elements of the offense as I've previously explained to you, you should find the defendant guilty.
>
> If you find the defendant **reasonably believed** that [the child's] welfare was in imminent danger, you must find the defendant not guilty. The consideration of long-term psychological damage or the like does not entitle the defendant to this defense.
>
> So the four elements are first that the defendant took or enticed [the child] from the lawful custody of her parent. Second, that [the child] was a child under the age of 18. Third, that the defendant did not have the legal privilege to take the child. And, fourth, that the defendant either knew she was doing these things or acted recklessly in doing them.
>
> In addition, the Commonwealth must disprove the defense, and the defense here is that the defendant believed that her action was necessary to preserve the child from danger to her welfare.

Notes of Testimony, 3-20-17 at 103-105 (emphasis added).

After the jury was excused to deliberate its verdict, the jury sent a communication to the trial judge. The following colloquy occurred on the record:

The Court: I received a communication from the jury.

> No. 1, what does the actual statute say in terms of the defense clause and how we should interpret the statute with respect to the judge's instruction.
>
> Second, what constitutes reasonable belief of the defendant to justify the defendant's withholding of the custody of the minor.

*Id*. at 112. The result was that the trial court re-read the instruction from the original jury charge, with no elaboration on the term "reasonable belief." *Id*. at 113-117.

In reviewing a challenged jury instruction, we must review the charge as a whole and not simply isolated portions. This way we can ascertain whether the charge fairly conveyed the required legal principles that were at issue. **See Commonwealth v. Batty**, 169 A.3d 70, 78 (Pa. Super. 2017). "A jury instruction will be upheld if it 'clearly, adequately, and accurately reflects the law.'" **Commonwealth v. Smith**, 956 A.2d 1029, 1034–35 (Pa. Super. 2008) (citation omitted).

The concise issue in this case is whether the Commonwealth was required to prove, beyond a reasonable doubt, that Appellant did not subjectively believe she was protecting the safety of the child. Appellant argues that the Commonwealth was. Conversely, the Commonwealth argues, and the trial court instructed the jury, that the Commonwealth was merely required to prove, beyond a reasonable doubt, that Appellant's subjective belief was unreasonable.

As explained by the Pennsylvania Supreme Court, "[t]o determine whether a jury instruction faithfully characterized the statute upon which it is based, we first must determine the scope and meaning of the provision in question, thus furnishing a rubric for our inquiry. Statutory interpretation presents a question of law, which we resolve *de novo*." **Commonwealth v. Veon**, 150 A.3d 435, 444 (Pa. 2016) (citation omitted).

Once the Court has established the meaning and scope of the statute, we must determine whether the trial court, which enjoys "broad discretion" in fashioning its jury charge, clearly, adequately, and accurately related the law to the jury. **Id**. Only when the trial court commits an abuse of discretion or provides the jury with an inaccurate statement of law, which must be prejudicial to the appellant, is there a reason to find reversible error and remand for a new trial. **See id**.

As always, we must first abide by the Statutory Construction Act, including the primary maxim that the object of statutory construction is to "ascertain and effectuate" the legislative intent in enacting the provision. 1 Pa.C.S.A. § 1921(a); **see also**, **Commonwealth v. MacPherson**, 752 A.2d 384, 391 (Pa. 2000). In pursuing that end, "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b). Our courts have repeatedly held that as a general rule,

> the best indication of legislative intent is the plain language of a statute. In construing the language of a statute, "words and

> phrases are to be construed according to rules of grammar and according to their common and approved usage." 1 Pa.C.S. § 1903(a). Words and phrases that have acquired a "peculiar and appropriate meaning," however, must be construed according to that peculiar and appropriate meaning. *Id.*

***Commonwealth v. Bradley***, 834 A.2d 1127, 1132 (Pa. 2003) (citations omitted).

The language of Section 2904(b)(1) is straightforward. There is no mention of a *reasonable person* standard. Guidance from our Supreme Court dictates, "while statutes generally should be construed liberally, penal statutes are always to be construed strictly, 1 Pa.C.S.A. § 1928(b)(1), and any ambiguity in a penal statute should be interpreted in favor of the defendant." ***Commonwealth v. Shiffler***, 879 A.2d 185, 189 (Pa. 2005).

A "reasonable person" standard is an objective standard and is applied when a fact-finder must determine whether a person's conduct conformed with community standards. It is not a subjective standard. ***See Commonwealth v Knox***, 190 A.3d 1146, 1155 (Pa. 2018); ***Petri v. Smith***, 453 A.2d 342, 347 (Pa. Super. 1982). For example, under a "reasonable diligence" standard, a person's "actions must be evaluated to determine whether he exhibited 'those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protection of their own interests and the interests of others.'" ***Cochran v GAF Corp.***, 666 A.2d 245, 249 (Pa. 1995).

The defense provided in Section 2904(b)(1) is a purely subjective test: whether the defendant "believed that his action was necessary to preserve the child from danger to its welfare." This is strictly a credibility decision to be made by the jury as to the belief of the defendant. This statute does not provide an opportunity for the jury to compare the actions of the defendant with a "reasonable person" under similar circumstances. If the Legislature intended to provide otherwise, it is within the discretion of the Legislature to amend the statute.

Our analysis is consistent with the Suggested Criminal Jury Instructions published by the Pennsylvania Bar Institute:

> 3. Circumstances may exist in a case that provide the defendant a complete defense to this charge. The Commonwealth must prove beyond a reasonable doubt that such circumstances did not exist. [Those circumstances are] [That circumstance is] *[give all that may be applicable under the facts of record]*:
> [a. that the defendant believed that [his] [her] action was necessary to preserve the child from danger to [his] [her] welfare.
> . . . .

Pa. SSJI (Crim), §15.2904 (2016). The Subcommittee Notes following the instruction state the subcommittee's rationale for not including the reasonableness standard:

> **Interfering With Custody of a Child--Defenses**
>
> This instruction is appropriate when one of the defenses under Crimes Code section 2904(b)(1) is raised.
>
> Regarding the bracketed defense under subdivision 3(a), there is debate about whether the defendant's belief that his or her actions were necessary to preserve the welfare of the child must be reasonable. Some say that this requirement is implied in the

- 11 -

statute, but the Model Penal Code rejects the standard, as it may implicate a parent who honestly thought he or she was protecting his or her child from danger, even if the belief may have been objectively unreasonable. ALI, *Model Penal Code and Commentaries*, comment 3 at 259-61 (1980). **The "reasonable" language has been omitted from this instruction because it is not mentioned expressly in the statute.** However, ***Commonwealth v. Chubb***, 3 Pa.D.&C.3d 676, 680 (C.P. Cumberland, 1977), held that it must be shown that the child's welfare was in danger or at least that the actor reasonably believed that it was. Furthermore, the belief of the actor must relate to imminent danger. The consideration of long-term psychological damage or the like does not entitle the defendant to this defense.

*Id*., Subcommittee Note (emphasis added). Obviously, we have decided not to follow the ***Chubb*** decision. Moreover, in ***Commonwealth v. McNemar***, 2015 WL 6457903 (Pa. Super. 2015), a non-precedential decision mentioned in the Appellee's brief, the issue of the inclusion of the reasonableness standard in the jury charge was not an issue on appeal. Therefore, the ***McNemar*** memorandum provides us no guidance on the issue herein.

Clearly, based upon the question presented to the trial court, the jury was confused as to the standard it was supposed to utilize in reviewing the actions of the Appellant. Because the jury was directed to evaluate the criteria of the defense provided in 18 Pa.C.S.A. § 290(b)(1) with an incorrect standard, prejudice has been established and a new trial is necessary.

Judgment of sentence reversed. Case remanded to the trial court for further proceedings consistent with this Opinion. Jurisdiction relinquished.

President Judge Emeritus Ford Elliott joins the opinion.

Judge Olson concurs in the result.

- 12 -

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 8/21/2019*