**[J-105-2020]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 33 MAP 2020 |
| | : | |
| | : | Appeal from the Order of the Superior |
| Appellant | : | Court at No. 3538 EDA 2018 dated |
| | : | 8/21/19, reconsideration denied |
| | : | 10/25/19, reversing the judgment of |
| | : | sentence dated 6/19/17 of the Bucks |
| v. | : | County Court of Common Pleas, |
| | : | Criminal Division, at No. CP-09-CR- |
| | : | 0005878-2016 and remanding for a new |
| H.D., | : | trial |
| | : | |
| Appellee | : | ARGUED: December 2, 2020 |

***OPINION***

**CHIEF JUSTICE SAYLOR**                              **DECIDED: March 25, 2021**

The Legislature has prescribed that a defendant is innocent of the crime of "interference with custody of children" when he or she believed that intrusive actions were necessary to spare the subject child from danger. In this appeal, the Commonwealth contends that the belief element of this offense should be construed to encompass only beliefs that are held reasonably.

Appellee and her husband separated in June 2015, divorce proceedings were initiated, and an agreement governing the shared custody of their five-year-old child was consummated. Appellee, however, repeatedly and intentionally violated this custody agreement. In June 2016, she absconded with the child ultimately to Florida, where the child remained for the balance of the forty-seven days during which she

remained separated from her father. Appellee claimed that the father was abusive, her attempts to secure assistance from the local children and youth agency had been rebuffed, and she had no option but to remove the child from the father's care.

Appellee was apprehended and charged with the offense of interference with custody of children under Section 2904 of the Crimes Code, which generally pertains if an individual "knowingly or recklessly takes or entices any child under the age of 18 years from the custody of its parent, guardian or other lawful custodian, when he [or she] has no privilege to do so." 18 Pa.C.S. §2904(a). Among several defenses internal to this statute, the General Assembly provided -- in Section 2904(b)(1) -- that criminal liability does not attach where "the actor believed that his action was necessary to preserve the child from danger to its welfare[.]" *Id.* §2904(b)(1).

At trial, the Commonwealth presented testimony from the father, a social worker, and a detective to the effect that Appellee's allegations of child abuse were false and/or unfounded. A clinical psychologist also attested that the child made no disclosures of any abuse across several counseling sessions. In the defense case, Appellee said that she had been advised by a nanny that the child had disclosed an incident of offensive touching by the father, and that subsequently the child repeatedly made statements to Appellee personally which were indicative of abuse. Appellee sought assistance from various governmental agencies to no avail, she maintained, leading to her ultimate decision to defy the custody agreement to protect her child. Appellee also presented the nanny's corroborative testimony, and her cousin attested that the child had apprised her of inappropriate touching as well.

The suggested jury charge for interference with custody of children under Section 2904, prepared by the Criminal Jury Instructions Subcommittee of the Committee on Proposed Standard Jury Instructions, indicates that a defendant is not guilty of

interference with the custody of a child where "the defendant *believed* that [his] [her] action was necessary to preserve the child from danger to [his] [her] welfare[.]" PA. STANDARD SUGGESTED JURY INSTRUCTIONS (CRIM.) §15.2904 (Pa. Bar Inst. 2016) (emphasis added; interlineations in original). The Subcommittee recognized that "there is a debate about whether the defendant's belief that that his or her actions were necessary to preserve the welfare of the child must be reasonable." *Id.*, Subcommittee Note. Further, the Subcommittee explained that drafters of Section 212.4 of the Model Penal Code -- after which Pennsylvania's interference with custody of a child statute was fashioned -- had explicitly rejected a reasonableness standard, "as it may implicate a parent who honestly thought he or she was protecting his or her child from danger, even if the belief may have been objectively unreasonable." *Id.* (citing MODEL PENAL CODE & COMMENTARIES, pt. II, §212.4, cmt. 3, at 259 (Am. Law Inst. 1980) [hereinafter "MPC & COMMENTARIES"]). Ultimately, the Committee omitted the reasonableness criterion from the suggested instruction, since there is no mention of it in Section 2904(b)(1). *See id.*

Courts generally are not wed, however, to the suggested instructions. *See Commonwealth v. Eichinger*, 631 Pa. 138, 178, 108 A.3d 821, 845 (2014) ("The Suggested Standard Jury Instructions themselves are not binding and do not alter the discretion afforded trial courts in crafting jury instructions; rather, as their title suggests, the instructions are guides only.").[1] Accordingly, the Commonwealth filed a contested pretrial motion seeking an instruction that the relevant defense to interference with the custody of a child should turn on whether the defendant had a *reasonable* belief, a

---

[1] Of course, a court would be bound by language included in the suggested instructions that is made mandatory by a precedential judicial decision.

position that had been adopted in a published decision by a county court. *See Commonwealth v. Chub*, 3 Pa. D.&C. 3d 676, 680 (C.P. Cumberland 1977).

The trial court granted the Commonwealth's motion and, at trial, the court instructed the jury that "[if] you find the defendant *reasonably believed* that [the child's] welfare was in imminent danger, you must find the defendant not guilty." N.T., March 20, 2017, at 104 (emphasis added). During deliberations, the jurors asked the following questions:

> [W]hat does the actual statute say in terms of the defense clause and how should we interpret the statute with respect to the judge's instruction[?]
>
> Second, what constitutes reasonable belief of the defendant to justify the defendant's withholding of the custody of the minor[?]

*Id.* at 112. The trial court responded by reiterating the charge as previously rendered. *See id.* at 114-117.

Appellee was convicted and sentenced and, although she did not initially pursue a direct appeal, her direct-appeal rights were reinstated in a post-conviction proceeding. In the ensuing appeal proceedings, the Superior Court reversed the judgment of sentence and remanded for a new trial. *See Commonwealth v. H.D.*, 217 A.3d 880 (Pa. Super. 2019).

The intermediate court's core reasoning was as follows:

> The language of Section 2904(b)(1) is straightforward. There is no mention of a reasonable person standard. . . .
>
> *        *        *
>
> The defense provided in Section 2904(b)(1) is a purely subjective test: whether the defendant "believed that his action was necessary to preserve the child from danger to its welfare." This is strictly a credibility decision to be made by the jury as to the belief of the defendant. This statute does

not provide an opportunity for a jury to compare the actions of the defendant with a "reasonable person" under similar circumstances. If the Legislature intended to provide otherwise, it is within the discretion of the Legislature to amend the statute.

*Id.* at 886-87. The court also highlighted the consistency of its ruling with the suggested jury instructions and the Model Penal Code. *See id.* at 887.

In the present discretionary appeal proceedings, the Commonwealth argues that the Superior Court's interpretation of Section 2904(b)(1) heralds "absurd and unreasonable results and undermines the very purpose of this criminal statute." Brief for Appellant at 16. In this regard, the Commonwealth finds it perverse that defendants may avoid criminal responsibility "merely by asserting their belief, true or not, that the child was in danger." *Id.*

It is the Commonwealth's position that the Legislature intended to criminalize precisely the type of parental kidnapping that occurred in this case. Along these lines, the Commonwealth complains:

> Under the Superior Court's interpretation, Appellee here -- who absconded with her five-year old daughter, moved her to another state to live with virtual strangers, thereby depriving the child's father of his court-ordered custody for a period of 47 days, and refused to reveal his daughter's location even after arrest -- would suffer no criminal consequence because she subjectively, but unreasonably, believed her daughter was in danger of abuse. In other words, Appellee would be permitted to avail herself of a complete defense to her crime despite the fact that her justification -- an alleged danger to her daughter's welfare -- and the many accusations she made against the child's father, were all deemed unfounded.

*Id.* at 18.

The Commonwealth acknowledges its awareness that that a statute's plain language is generally the best indicator of legislative intent. *See id.* at 18 (citing, *inter*

*alia*, 1 Pa.C.S. §1921(b) ("When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursing its spirit.")). But, citing *Chubb*, it argues that Section 2904(b)(1) is susceptible to different interpretations. Moreover, the Commonwealth reiterates that the Legislature has also instructed courts to presume that it doesn't intend results that are "absurd, impossible of execution or unreasonable." 1 Pa.C.S. §1922(1). Particularly because the Commonwealth believes that the Superior Court's interpretation conflicts with the asserted legislative objective to "criminalize parental kidnapping," it asks us to turn to principles of statutory interpretation pertaining in the face of ambiguity or non-explicitness, including consideration of the occasion and necessity for a statute, the mischief to be remedied, and the consequences of a particular interpretation. Brief for Appellant at 19-20.

Throughout its brief, the Commonwealth stresses that the Section 2904(a) offense was designed to protect the custodial rights of a parent against unlawful and unjustified interference by another person, including another parent. *See id.* at 29. The Commonwealth proceeds to highlight commentary from the Model Penal Code explaining that that Code's corollary provision seeks to advance "an independent protection of the custodial relationship from unwarranted interference by persons who have no legal privilege to do so." *Id.* at 21 (quoting MPC & COMMENTARIES, pt. II, art. 212, Introductory Note, at 209 (emphasis added)). Consistently, the Commonwealth emphasizes, the report of the Joint State Government Commission proposing the enactment of Section 2904 states that: "[T]his section would apply to a parent who willfully defies a custody order by taking the child from the parent who was awarded custody." *Id.* at 22 (quoting JOINT STATE GOV'T COMM'N REPORT, PROPOSED CRIMES CODE FOR PA. 106 (1967)). "In short," the Commonwealth maintains, "it is clear that in

adopting this statute, the legislature intended not to criminalize all custody disputes, but to criminally punish those persons, including parents, who would defy lawful custody orders by taking a child from a parent who has legal custody." *Id.*[2]

The Commonwealth also advances the *Chubb* court's position that, absent a requirement of a reasonable belief of danger, "no one could be convicted of this offense if he simply states that he believed that his action was necessary to preserve the child from a 'danger to its welfare.'" *Id.* at 24 (quoting *Chubb*, 3 Pa. D.&.C. at 680). The Commonwealth otherwise recognizes, however, that even under the interpretation of Section 2904(b)(1) which would allow for an unreasonable-belief defense, it is within the purview of the factfinder to reject the defense where the defendant's belief is found to be insincere. *See id.* at 25. Nevertheless, in the Commonwealth's judgment, this is equally unsatisfying and unreasonable, since criminal liability would turn "simply on how successfully [the defendant] can *pretend* to have held such a belief." *Id.* at 25 (emphasis in original).[3]

Further, the Commonwealth highlights that other justification-based defenses delineated in the Crimes Code require a reasonable belief, for example, throughout the Code's general justification provisions set forth in Chapter 5. *See, e.g.*, 18 Pa.C.S. §501 (prescribing that "believes" or "belief," for purposes of the series of justification defenses set forth in Chapter 5, means "reasonably believes" or "reasonable belief").

---

[2] As illustrated by this summary, the Commonwealth intermittently frames its arguments in a way that would admit of *no* belief-based defense to the crime of interference with custody of children.

[3] The argument that criminal liability can be avoided via skilled deception may be directed to a host of *mens rea* provisions throughout the Crimes Code and does not serve as a basis to disregard legislative judgments discernable from the plain language of a statute or through the application of other principles of statutory construction. Accordingly, this contention will be considered no further here.

Thus, the Commonwealth posits that the General Assembly would not have otherwise permitted a defendant to escape criminal liability based on a wholly unreasonable belief. *See* Brief for Appellant at 27.

Upon review, we find that the Commonwealth's arguments are too tenuous to be credited. For example, as noted, the Commonwealth references commentary from the Model Penal Code discussing the general purposes of criminalizing interference with custody. But it omits any reference to the specific commentary directed to the defense in issue in this appeal -- highlighted by both the Superior Court and the Criminal Jury Instructions Subcommittee -- which squarely contradicts its position, as follows:

> It might be plausible . . . to exculpate from liability for interference with custody only those who can show a *reasonable* belief in the necessity of their actions. . . . On the other hand, it may seem extravagant to demand reasonableness from a participant in a custody dispute over his own child, and in any event, most borderline cases can be handled under the more individualized consideration of the contempt power. For these reasons, it was thought preferable to preclude conviction of this offense merely on proof of negligence, and [the relevant defense] therefore *requires only an honest belief that the actor's conduct was "necessary to preserve the child from danger to its welfare."*

MPC & COMMENTARIES, pt. II, §212.4, cmt. 3, at 259 (emphasis adjusted; footnote omitted); *see also* Model Penal Code Tentative Draft 11, art. 212, §212.4, at 23 (Am. Law Inst. 1960) (stressing the special treatment contemplated for "estranged parents struggling over the custody of children" and opining that "such situations are better regulated by custody orders enforced through contempt proceedings").[4] We decline the

---

[4] Notably, to the degree there would be any ambiguity, the Court has previously referenced the Model Penal Code in undertaking statutory construction. *See, e.g.*, *Commonwealth v. Rushing*, 627 Pa. 59, 73-74, 99 A.3d 416, 424-25 (2014) (relying, in part, upon the Model Penal Code in construing Section 2901(a) of the Crimes Code).

Commonwealth's invitation to infer that the General Assembly blindly patterned Section 2904(b)(1) after Section 212.4 of the Model Penal Code, without any apprehension of the overt policy choice underlying that provision which was made manifest in its terms.[5]

Additionally, while the Commonwealth correctly highlights that the Legislature has explicitly required a reasonable belief to support justification defenses under Chapter 5 of the Crimes Code, *see* 18 Pa.C.S. §§501-510, this in no way supports a rule that all justification defenses should be predicated upon reasonable belief. Instead, Chapter 5 illustrates that the General Assembly knows how to insert a reasonable-belief element into a defense when that is its intention.[6]

---

[5] According to the dissent, although the General Assembly may have copied provisions from model legislation, it "simply does not specify" whether it intended the meaning ascribed to those terms by the model code's authors. Dissenting Opinion, *slip op.* at 3. In our judgment, however, it would be extraordinary for lawmakers to attempt to impose a materially different connotation on borrowed terminology without saying so. This is particularly so when the plain language adopted by the General Assembly is wholly consistent with these authors' developed explanation. *See infra* note 6.

In this line of discussion, the dissent observes that a publisher's editorial note attending Section 2904 refers to the statute as being "similar" to Section 212.4 of the Model Penal Code. We note, however, that the language of material significance here -- *i.e.*, the Section 2904(b)(1) defense -- is, in fact, identical. *Compare* 18 Pa.C.S. §2904(b)(1), *with* MPC & COMMENTARIES, pt. II, §212.4(1)(a), at 248 (prescribing a defense to the proposed crime of interference with custody where "the actor believed that his action was necessary to preserve the child from danger to its welfare").

[6] The dissent for its part, opines that the plain language of word "believed" connotes only a reasonable belief. *See* Dissenting Opinion, *slip op.* at 2. In point of fact, a reasonableness qualifier is generally employed, where deemed appropriate, precisely because "believed" is a broader term that does not intrinsically turn on reasonableness. *See, e.g.*, *Believe*, MERRIAM-WEBSTER DICTIONARY, [https://www.merriam-webster.com/dictionary/believe](https://www.merriam-webster.com/dictionary/believe) (defining "believe," *inter alia*, as "to consider to be true"); *see also Belief*, BLACK'S LAW DICTIONARY (10th ed.. 2014) (defining "reasonable belief" as one of several subcategories of "belief"). This is why, contrary to the dissent's view, the Legislature's approach of omitting such a reasonableness qualifier, in the Section 2904(b)(1) defense, does not stand on equal footing with the omission of any specific (continued…)

We do not foreclose that there may be some instances in which a reviewing court might infer that the Legislature intended an unstated reasonableness condition in the face of unreasonable results that would flow from a statute's application in the absence of such a condition. Here, however, it is not irrational for the Legislature to credit the explicit premises of the model law from which Section 2904(b)(1) was derived, *i.e.*, that consideration should be given to the emotional dynamic of custody disputes, and that the courts' contempt powers are sufficient to address unreasonable-belief intrusions upon child custody falling short of kidnapping. *See* MPC & COMMENTARIES, pt. II, §212.4, cmt. 3, at 259; *accord* Model Penal Code Tentative Draft 11, art. 212, §212.4, at 23.[7] The alternative avenue readily available to the General Assembly would have been to insert a reasonableness term into the Section 2904(b)(1) defense, as with

---

(…continued)

reference to unreasonable beliefs. In short, the unqualified word selected by the General Assembly -- "believed" -- facially encompasses beliefs that are reasonably held as well as those that are not reasonable.

[7] We recognize that Section 2904 applies to persons who are not parents and who may not be subject to judicial custody orders. There are many instances in which model or suggested legislation is not fully theorized and, where adopted, merits ongoing evaluation with experience. Thus, for example, to the degree that the Legislature relied on the contempt-power justification, it may wish to consider limiting the unreasonable-belief defense to parents subject to custody orders, or for that matter, it may wish to reconsider whether to insert a reasonableness requirement into the statute applying to all persons including parents. These are quintessentially legislative judgments; whereas, our role is limited to assessment of the Legislature's intent when it enacted Section 2904(b)(1) in 1972, premised upon the corollary provision of the Model Penal Code. *See* JOINT STATE GOV'T COMM'N REPORT, PROPOSED CRIMES CODE FOR PA. at 106 ("This section is derived from Section 212.4 of the Model Penal Code[.]").

In any event, those not privileged in any manner to take children from a parent's custody incur greater risk of violating other criminal-law statutes to the extent that they hostilely intercede in custodial affairs. In other words, as reflected in the Model Penal Code Commentaries, the primary line of thinking associated with Section 212.4 was centered on interference by parents and caretakers involved in custodial disputes.

other justification-based defenses, and as some other jurisdictions have done relative to interference with child custody. *See, e.g.*, Wis. Stat. §948.31(4)(a)(1). In the present circumstances, consistent with the Superior Court's able analysis, we find the absence of any such designation to be dispositive.

Finally, we take no issue with the dissent's position that the Legislature could have made a policy choice to condition the belief element of the Section 2904(b)(1) defense on reasonableness. *See* Dissenting Opinion, *slip op.* at 3. Again, our holding is premised on the fact that there is a dearth of evidence that intended to do so.[8]

The order of the Superior Court is affirmed.

Justices Baer, Todd, Donohue, Dougherty and Wecht join the opinion.

Justice Mundy files a dissenting opinion.

---

[8] The dissenting opinion suggests that the concept of reasonability is so inherent in the law's overarching domain that courts should infer that lawmakers intend to integrate it into all manner of statutes, including criminal-law ones prescribing the *mens rea* necessary to support a defense. *See* Dissenting Opinion, *slip op.* at 2. The dissent, however, fails to cite any authority for this proposition, and, in our judgment, no such broad-based characterization of the law is reasonably possible. Notably, moreover, in some scenarios at least, extension of such an approach to criminal *mens rea* defenses would squarely conflict with the principle of lenity which generally applies to ambiguous penal law provisions. *See Commonwealth v. Fithian*, 599 Pa. 180, 194-95, 961 A.2d 66, 74 (2008) (explaining that, if an ambiguity exists in a penal statute, the ambiguity should be resolved in the light most favorable to the accused).